# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 7323 | **DATE** | 11/14/2002 |
| **CASE TITLE** | United States of America vs. Kola Abioldun Olutayo | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Kola Olutayo's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. [1-1] is denied. This is a final and appealable order. This case is terminated. All pending motions are denied as moot.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | NOV 1 5 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 16 |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| TSA | courtroom deputy's initials | 02 NOV 14 AM 10: 32 | date mailed notice | | |
| | | FILED-10 | mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 01 C 7323 |
| v. | ) | |
| | ) | Wayne R. Andersen |
| KOLA ABIODUN OLUTAYO, | ) | District Judge |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

NOV 1 5 2002

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the petition of Kola Olutayo, as a prisoner in federal custody, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the petition is denied.

## BACKGROUND

In early October 1997, Olutayo rented a mail box at a Mail Boxes, Etc. store in Mount Prospect, Illinois. In obtaining the box, Olutayo used the false name "Kenneth Schulte" and provided the Mail Boxes, Etc. employee with a forged driver's license and Social Security card, and a non-existent address. After discussions with a friend about the possibility of receiving packages from a person in Bangkok, Thailand, Olutayo went to his mail box on October 23, picked up a package from Bangkok, and delivered it to an individual at a gas station. This package was never recovered. After the October 23 pickup, Olutayo had several telephone conversations with an individual in Bangkok, during which they discussed the delivery of the package and the possible delivery of a second package in exchange for a $1,500 payment. Sometime after October 23, Olutayo began to suspect that the first package contained heroin, and

1

that the second would also contain the drug.

On December 27, 1997, United States Customs agents at O'Hare International Airport segregated a package mailed from Bangkok and addressed to Kenneth Schulte at the Mail Boxes, Etc. store in Mount Prospect. After a narcotics dog alerted the agents to the possibility of drugs, the Customs agents opened the package, finding several statues with drilled cavities that contained approximately 1.172 kilograms of a white powder. The white powder tested positively for heroin. Customs notified Drug Enforcement Agency ("DEA") officers about the package, and the DEA agents arranged to have the package delivered as addressed.

An employee of Mail Boxes, Etc. left a message for Olutayo on December 29, 1997, telling him that a package had arrived for Kenneth Schulte. That same day, law enforcement agents who were stationed near Mail Boxes, Etc. observed Olutayo driving into the strip mall parking lot in front of the store. They saw him sitting in his car with the engine running while looking around in all directions for approximately five minutes. The agents then watched Olutayo drive out of the parking lot only to re-enter it using a different entrance. Olutayo parked his car, entered the store, and picked up the package that had been intercepted at O'Hare Airport, signing the name "Kenneth Schulte" in the Incoming Package Log. After observing him put the package into his truck, the surveillance agents arrested Olutayo.

A grand jury returned a two-count indictment charging Olutayo with attempting to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846, and using a false Social Security number, in violation of 42 U.S.C. § 408(a)(7)(B). Olutayo originally pleaded not guilty to both counts of the indictment, but withdrew his plea of not guilty to the attempt to possess heroin with intent to distribute charge and entered a guilty plea without a plea agreement to that

2

count. A sentencing hearing was held on June 29, 1999, during which this Court rejected

Olutayo's request for a minor-role reduction in his offense level. Olutayo was then sentenced to

72 months in prison, five years of supervised release, and a fine in the amount of $2,500. *See*

*United States v. Olutayo*, 2000 WL 340775, at *1 (7th Cir. March 29, 2000). On March 29,

2000, the Seventh Circuit affirmed the petitioner's conviction and sentence. *See id.* at *2.

On September 21, 2001, Olutayo filed the instant motion pursuant to 28 U.S.C. § 2255.

In his motion, the petitioner argues that his sentence should be vacated because: 1) his trial and

appellate counsel rendered ineffective assistance by failing to argue that he was entitled to a two-

level reduction for being a minor participant in the offense; 2) his trial counsel was ineffective

for failing to seek a downward departure based on his status as a deportable alien; and 3) the

$2,500 fine imposed by this Court constituted cruel and unusual punishment under the Eighth

Amendment to the United States Constitution.

## DISCUSSION

Collateral relief under 28 U.S.C. § 2255, the federal version of habeas corpus, is available

only in limited circumstances. The statute provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or correct the
> sentence.

28 U.S.C. § 2255. Such relief is therefore limited to "an error of law that is jurisdictional,

constitutional, or constitutes a fundamental defect which inherently results in a complete

miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting

3

*Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

A motion under § 2255 is "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). The failure to raise an issue on direct appeal generally bars a defendant from raising it in a subsequent post-conviction proceeding. *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994). Therefore, a petitioner cannot raise in his habeas petition non-constitutional issues that could have been but were not raised on direct appeal or rehash issues he raised on direct appeal, absent a showing of changed circumstance. *See Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) ("in the absence of changed circumstances of fact or law, we will not reconsider an issue which was already decided on direct appeal."). The petitioner can, however, raise constitutional claims for the first time in a collateral attack if he "can demonstrate cause for the procedural default as well as actual prejudice from the failure to appeal." *Barker*, 7 F.3d at 632; *see also Mankarious v. United States*, 282 F.3d 940, 943 (7th Cir. 2002); *McCleese*, 75 F.3d at 1179; *Velarde v. United States*, 972 F.2d 826, 827 (7th Cir. 1992).

**I.      Was the Petitioner Denied Effective Assistance of Counsel?**

The primary argument Olutayo has raised in his Section 2255 petition is that he was denied effective assistance of both trial and appellate counsel when they failed to raise two issues which he felt would have reduced the period of incarceration he received at his sentencing. Particularly, Olutayo contends that his trial and appellate counsel were ineffective for not arguing that he was entitled to a two-level minor role adjustment pursuant to U.S.S.G. § 3B1.2(b) and that his trial counsel was ineffective for not seeking a downward departure based on his status as a deportable alien. As Olutayo did not raise these issues during his sentencing hearing or on

direct appeal, we conclude that they are procedurally barred. *See Olmstead*, 55 F.3d at 319.

However, the Seventh Circuit has said that "most claims of ineffective assistance of trial counsel are properly raised for the first time in a § 2255 motion rather than on direct appeal," because, "in order to be successful, such claims generally require that the record be supplemented with 'extrinsic evidence that illuminates the attorney's errors.'" *McCleese*, 75 F.3d at 1178. So the claim is not defaulted if it could "not be developed without new facts," or "at the time of taking the appeal it had reasonably appeared that new evidence might be necessary, though it has since become apparent that the trial record itself was the only evidence that could be presented in support of the claim." *Guinan v. United States*, 6 F.3d 468, 472 (7th Cir. 1993); *see also United States v. Yates*, 208 F. Supp. 2d 959, 964 (N.D. Ill. 2002). But "where a defendant offers no extrinsic evidence to support his claim of ineffective assistance of counsel [nor reason at the time of appeal to think that such evidence might be necessary] and he was represented by different counsel on appeal, that defendant must bring that claim on direct appeal or face procedural default for failing to do so." *McCleese*, 75 F.3d at 1178.

## A.    The Minor Role Reduction

With respect to his argument that his trial counsel was ineffective for failing to pursue a two-level minor role adjustment, Olutayo has repeatedly stated that the factual predicate for his perceived entitlement to the reduction was readily apparent in the trial record. He claims that his only role in the charged offense was to provide the mailbox (which Olutayo concedes was opened to effectuate a planned credit card scheme) through which his "friend" in Thailand sent him a substantial quantity of heroin. What Olutayo has not provided in his pleadings is any extrinsic evidence which sheds light on his trial counsel's purported errors. This is probably the

5

case because such extrinsic evidence does not exist. Rather, the record in this case is clear that Olutayo's trial counsel made the reasonable strategic choice to focus the Court's attention on a reduction pursuant to U.S.S.G. § 2D1.1(b)(6) (the "Safety Valve") rather than the two-level minor role reduction. *See Washington v. Strickland*, 466 U.S. 668, 690, 104 S.Ct. 2052 (1984) ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .") We ultimately determined that Olutayo was entitled to the Safety Valve, over the government's objection, and this lowered his sentencing range by 17 months. Therefore, because Olutayo cannot provide any extrinsic evidence relating to his trial counsel's purported errors and because Olutayo had the benefit of different counsel on appeal, we conclude that his ineffective assistance of trial counsel claim is procedurally barred.

Additionally, Olutayo has argued that his appellate counsel was ineffective for failing to adequately argue on appeal that he was not the sole participant in this offense, and, thus, he was legally entitled to a minor role reduction. We disagree. On appeal to the Seventh Circuit, Olutayo's appellate counsel specifically raised the issue of whether we erred in denying him a reduction under § 3B1.2(b) for playing a minor role in the offense of his conviction. Appellate counsel accurately laid out the facts of this case to the Seventh Circuit and they concluded that a minor role adjustment was not appropriate. Specifically, the court held that "Olutayo was the sole participant in his crime of conviction - picking up the drugs and placing them in his car - and it makes no sense to claim that one is a minor participant in one's own conduct." *Olutayo*, 2000 WL 340775, at *2. Given the fullness of the record before the Seventh Circuit and what we assume to be the vigorous advocacy of the petitioner's sole issue on appeal, we conclude that Olutayo was not denied effective assistance of appellate counsel.

6

## B.    The Deportable Alien Downward Departure

As with Olutayo's first ineffective assistance argument, the claim that his trial counsel

was ineffective for failing to seek a downward departure because he was a deportable alien was

also not presented to either this Court at sentencing or to the Seventh Circuit on direct appeal.

Accordingly, this claim is procedurally defaulted unless Olutayo can establish cause and

prejudice to excuse the default.

For purposes of this motion, we will assume that Olutayo has satisfied the cause

requirement because of the alleged ineffectiveness of his trial counsel.  However, we conclude

that the petitioner has not complied with the prejudice requirement.  This is so because it is well-

settled in both this Court and the Court of Appeals that such a downward departure is only to be

granted in "extraordinary circumstances." *United States v. Farouil*, 124 F.3d 838, 845-47 (7th

Cir. 1997).  Olutayo has not met this heavy burden.

In his pleadings, Olutayo has argued that he was entitled to a deportable alien downward

departure because: 1) as a deportable alien, he is not entitled to participate in certain early release

programs such as community confinement in a halfway house; 2) he will be subjected to

additional incarceration following his release from prison by the Immigration and Naturalization

Service pending his deportation to Nigeria; and 3) he may be subjected to additional punishment

upon his return to Nigeria.  Our job is to evaluate this information in light of the recent

pronouncements from the Seventh Circuit regarding the availability of deportable alien

downward departures.

Recently, the Seventh Circuit has stated that its prior decision in *Farouil* does not require

a sentencing court to grant a downward departure every time a defendant is a deportable alien.

7

*See United States v. Gallo-Vasquez*, 284 F.3d 780, 784 (7th Cir. 2002). Indeed, granting a departure based on alien status is only permissible in exceptional circumstances, and "a defendant's status as a deportable alien is relevant only insofar as it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense." *Id.* (quoting *United States v. Guzman*, 236 F.3d 830, 834 (7th Cir. 2001)). In this case, Olutayo has offered nothing which indicates to us that his status as an alien was so extraordinary as to be outside of the heartland of cases contemplated by the guidelines. This means that, if Olutayo's trial counsel had made a motion for a downward departure, this Court would have denied that motion, especially in light of the Seventh Circuit's recent holdings on this issue. Accordingly, Olutayo has failed to establish that he was prejudiced by his failure to raise this claim either at sentencing or on direct appeal, and, thus, the issue is procedurally barred.

## II.     Was the $2,5000 Fine Cruel and Unusual Punishment?

At the outset, we note that the petitioner's excessive fine argument is procedurally barred because he did not raise the issue either at his sentencing hearing or on direct appeal to the Seventh Circuit. Therefore, as with his ineffective assistance of counsel claims, in order for us to reach the merits of this argument, Olutayo must demonstrate cause for the default as well as any prejudice resulting from his failure to raise the issue on appeal.

In his reply brief, Olutayo has argued that he did not raise the issue at trial or on appeal because he did not become aware of the purported constitutional violation until he was actually incarcerated and compelled to work to pay off his fine through the Inmate Responsibility Program. Furthermore, he has asserted that he has been prejudiced by his failure to raise the

8

issue on direct appeal because, in order to pay the Court-imposed fine, he must work in a prison industries factory (which, under normal circumstances, he would not have to do) to earn a higher prison wage. His contention is that forcing him to work in a factory in order to pay a fine constitutes cruel and unusual punishment, especially considering that the lion's share of his earnings goes to paying the fine instead of to his preferred discretionary spending choices, such as purchasing toiletries and making long distance telephone calls to Nigeria. For purposes of this argument, we will assume then that Olutayo has satisfied the cause and prejudice requirement, and we, therefore, will proceed to the merits of his claim.

The Eight Amendment guarantees that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Our research has failed to discover any case in which a court has determined that a fine within or below the applicable sentencing guideline range violated the Eighth Amendment. Given that the sentencing guideline system as a whole has been deemed constitutional by the United States Supreme Court, *see Mistretta v. United States*, 488 U.S. 361, 412, 109 S.Ct. 647 (1989), we conclude that the imposition of a fine within the range set by the United States Sentencing Commission does not violate the Eighth Amendment. Similarly, having a federal prisoner work off that fine through the Inmate Responsibility Program does not constitute either an "excessive fine" or "cruel and unusual punishment."

That having been said, however, we would like to briefly comment on Olutayo's fine arguments. In his Section 2255 petition, Olutayo states that our imposition of a $2,500 fine in this case has forced him to work "the Prison Industries voluntary job assignment called U.N.I.C.O.R." (Section 2255 Petition at 17.) Through this program, the petitioner has been able

9

to earn a higher wage while working in a factory setting. Nevertheless, Olutayo makes the rather incredible argument that the fine, coupled with his placement in a factory, has deprived him of his right to spend his "hard-earned" money where he wants to. Specifically, he contends that, if not for the fine, he would spend his money on toiletries, stamps, and $15 telephone calls to his native Nigeria. We have little sympathy for the petitioner's arguments. First, the fine of $2,500 imposed in this case was well below the applicable guideline range. Second, in the case of Olutayo, his placement in the Inmate Responsibility Program appears to be working because he has paid almost half of his fine through his hard work in the prison factory. Finally, we are certainly not troubled with the idea of Olutayo actually learning a valuable and marketable skill which could be used to better his life once he is released from prison. Therefore, the petitioner is not entitled to relief on this claim.

## CONCLUSION

For the foregoing reasons, Kola Olutayo's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. This is a final and appealable order. This case is terminated. All pending motions are denied as moot.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: November 14, 2002

10